**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

:

DERRICK THOMAS,                  :       CIVIL ACTION

:

         Petitioner,             :

:

         v.                      :       NO. 03-6273

:

FRANK TENNIS, et al.,            :

:

         Respondents.            :

_____ :

ARNOLD C. RAPOPORT,
United States Magistrate Judge

**REPORT AND RECOMMENDATION**

        Presently before this Court is a pro se Petition for
Writ of Habeas Corpus filed by the Petitioner, Derrick Thomas
("Petitioner").  Petitioner is currently serving a life sentence
and is incarcerated in the State Correctional Institution,
Rockview, located in Bellefonte, Pennsylvania.  For the reasons
that follow, it is recommended that the Petition should be denied
with prejudice and dismissed without an evidentiary hearing.

**I.      FACTS AND PROCEDURAL HISTORY**.[1]

        On March 15, 1993, Petitioner was convicted by a jury
before the Honorable David N. Savitt of the Court of Common Pleas
of Philadelphia, for first degree murder, retaliation against a
witness, possession of an instrument of crime, and criminal

_____

        [1]This information is taken from the Petition, the Response
thereto, and all attachments to those pleadings.

conspiracy.[2]  The jury set the penalty for first degree murder at
life imprisonment.  Petitioner's trial counsel filed post-verdict
motions.  New counsel was thereafter appointed and filed
supplemental post-verdict motions on Petitioner's behalf.  Judge
Savitt denied the post-verdict motions on April 20, 1994, and
sentenced Petitioner to a mandatory term of life imprisonment for
first-degree murder, and concurrent terms of one to two years'

─────────────

[2]The trial court related the following facts:

> On February 8, 1990 at 8:14 a.m. police
> discovered the body of the victim, Anthony
> Vaughn, in a park at 4300 North 18th Street,
> The cause of death was blunt head trauma and
> an incised wound to the neck.
> The previous, [sic] night February 7,
> 1990 shortly before midnight, defendants
> **Derrick Thomas**, Michael Stokes and Darryl
> Harris along with the victim, Anthony Vaughn
> and another man, Hassan Bilal were in the
> basement of a house at 2457 North Newkirk
> Street which was Harris' residence.  The
> victim did some target shooting in the
> basement and when he ran out of bullets,
> Stokes began making remarks about his being a
> snitch, Thomas then picked up a baseball bat
> and hit him in the head.  After Vaughn fell
> to the floor, Thomas tied him hand and foot
> and handed a machete to Stokes which Stokes
> used to slit Vaughn's throat.  Defendants
> then loaded the victim's body into a station
> wagon and dumped it in the park where it was
> found.  The case was tired [sic] by this
> court and a jury from February 25th to March
> 16, 1993 and the defendants found guilty of
> First Degree Murder, Retaliation Against a
> Witness, Possession of an Instrument of a
> Crime and Conspiracy.

Resp., Ex. A, Ex. A, pp. 1-2 (emphasis added).

imprisonment for retaliation against a witness, one to two years'
imprisonment for possession of an instrument of crime, and one to
ten years' imprisonment for criminal conspiracy.  Judge Savitt
filed his trial court opinion on July 29, 1994.  <u>See</u> Resp., Ex.
A, Ex. A.  Petitioner did not file a direct appeal from the
judgments of sentence.

On April 28, 1995, Petitioner filed a <u>pro se</u> petition
for state post-conviction collateral relief pursuant to the Post
Conviction Relief Act ("PCRA").  <u>See</u> 42 Pa. C.S.A. § 9541, <u>et
seq.</u>  Petitioner sought reinstatement of his direct appellate
rights, and was granted the right to a direct appeal <u>nunc pro
tunc</u> on June 19, 1996.  He claimed on appeal that: (1) the
evidence was insufficient as a matter of law to sustain his
convictions; (2) the trial court erred in permitting police
detectives to testify as to statements made by the victim
regarding two unrelated homicides; (3) the trial court erred in
permitting police detectives to testify as to Hassan Bilal's
involvement with crisis intervention; (4) the trial court
improperly limited his cross-examination of Commonwealth witness
Richard Schwartzman, M.D.; and (5) trial counsel was ineffective
for failing to object to Dr. Schwartzman's statement that he did
not believe that Hassan Bilal was "telling falsehoods."  In an
unpublished memorandum dated June 12, 1997, the Pennsylvania
Superior Court reversed the judgment of sentence imposed for

possession of an instrument of crime because the court found that
the evidence was insufficient to sustain conviction on that
offense, and the court affirmed the judgments of sentence for
first degree murder, criminal conspiracy, and retaliating against
a witness.  See Resp., Ex. A, Exs. B, C; Commonwealth v. Thomas,
700 A.2d 1029 (Pa. Super. 1997)(table).  On December 9, 1997, the
Pennsylvania Supreme Court denied the petition for allowance of
appeal.  Commonwealth v. Thomas, 705 A.2d 1308 (Pa. 1997)(table).

          Petitioner filed a pro se PCRA petition on April 21,
1998.  Counsel was appointed, and after reviewing the record,
filed a no-merit letter pursuant to Commonwealth v. Finley, 550
A.2d 213 (Pa. 1988).  The PCRA court notified petitioner that it
intended to dismiss the petition without a hearing, and
petitioner filed pro se objections.  Judge Savitt nonetheless
denied and dismissed the PCRA petition after independently
reviewing the record, and permitted counsel to withdraw on May
20, 1999.  Petitioner appealed to the Pennsylvania Superior
Court, claiming that counsel's no-merit letter was inadequate.
The Superior Court determined that the Finley letter was
inadequate because petitioner raised eighteen issues in his PCRA
petition, but counsel listed only eight issues in his no-merit
letter and only addressed three of those issues in any detail.
See Resp., Ex. B.  The Superior Court vacated Judge Savitt's
order, and remanded for the appointment of new counsel.  See Ex.

4

B; <u>Commonwealth v. Thomas</u>, 758 A.2d 726 (Pa. Super. 2000)(table).

New counsel was appointed on remand and filed a detailed no-merit letter, addressing all of petitioner's claims and asking permission to withdraw from the case.  <u>See</u> Resp., Ex. C.  Judge Savitt again dismissed the PCRA petition on April 17, 2001.  Petitioner filed a notice of appeal with the Superior Court, claiming that: (1) he filed a timely notice of appeal pursuant to the prison mailbox rule; and (2) the PCRA court erred in adopting a defective no-merit letter without any findings to show an independent judicial review of the record was conducted and without any explanation of the nature and grounds for its conclusions in its written opinion.  <u>See</u> Resp., Ex. D.

On October 28, 2002, the Superior Court, voting 2-1, vacated the PCRA order denying the petition and remanded the case to the PCRA court "for a proper opinion which addresses Appellant's issues and the adequacy of counsel's no-merit letter."  <u>See</u> Resp., Ex. E, p. 10; <u>Commonwealth v. Thomas</u>, 816 A.2d 335 (Pa. Super. 2002)(table).  On remand, the PCRA court issued an opinion on December 16, 2002, specifically delineating its reasons for dismissing the PCRA petition.  <u>See</u> Resp., Ex. F. Petitioner filed an appeal in the Superior Court alleging the following issues: (1) whether the incarcerated appellant filed a timely notice of appeal pursuant to the prisoner mailbox rule; and (2) whether the PCRA court committed reversible error by

adopting a defective no-merit letter, without any findings to
show an independent judicial review of the record was conducted
and without any explanation of the nature and grounds for the
[PCRA] court's conclusions within its written opinion.  See
Resp., Ex. G.  The Superior Court concurred with the PCRA court's
assessment of petitioner's issues, but differed as to the PCRA
court's statements regarding two of petitioner's allegations of
error where the court stated that counsel was ineffective but
petitioner was unable to prove prejudice.  The Superior Court
stated that:

> [w]e recognize counsel cannot be deemed ineffective
> until Appellant proved there was arguable merit to his
> underlying claim, the course counsel had chosen had no
> reasonable basis designed to effectuate his interests,
> and Appellant demonstrated prejudice caused by
> counsel's acts or omissions. *See Knighten, supra*.
> Nevertheless, the PCRA court's conclusions are correct
> and, therefore, we agree with its disposition.
> Accordingly, we affirm the order of PCRA court on the
> basis of that opinion.

Id. at 8.  Petitioner filed another pro se PCRA petition on
October 3, 2003.  Judge Savitt dismissed this petition as
untimely on November 17, 2003.  Petitioner appealed to the
Pennsylvania Superior Court, which affirmed the dismissal of the
petition as untimely on December 10, 2004.  See Resp., Ex. H;
Commonwealth v. Thomas, No. 51 EDA 2004 (Pa. Super. 2004).

On November 17, 2003, Petitioner filed the instant pro
se Petition containing the following claims: (1) the evidence at
trial was insufficient to support a guilty verdict as to all

6

charges; (2) the prosecutor committed misconduct when he (a) vouched for the credibility of a witness, and (b) withheld a witness statement; (3) the trial court erred when it allowed the admission of prejudicial testimony in the form of two Philadelphia police detectives to read into evidence statements made by the victim concerning two unrelated homicides; (4) the trial court erred when it allowed the admission of prejudicial testimony of a crisis intervention worker regarding a cooperating co-defendant; and (5) trial counsel was ineffective because he (a) failed to object to the testimony of the medical examiner who allegedly was not properly qualified as an expert, (b) failed to ask for a corrupt source instruction, (c) labored under an actual conflict of interest, and (d) failed to object to witness statements regarding the veracity of a co-defendant.

This case was referred by the Honorable James Knoll Gardner for preparation of a Report and Recommendation. Respondents contend that, because Petitioner did not raise many of these claims at every level of the state courts, they are defaulted and unreviewable. They also claim that Petitioner has not established cause and prejudice to excuse the default of his claims, and the claims are without merit. Each claim is hereafter addressed.

III.      **DISCUSSION**.

    A.      **Petitioner's Challenge to the Sufficiency of the Evidence.**

        Petitioner's first claim is that the evidence at trial was insufficient to support a guilty verdict as to all charges against him.  This claim was presented in the state court.  Judge Savitt, in his July 29, 1994 opinion denying Petitioner's post-trial motion for a new trial, stated:

> Finally all defendants argue that the evidence was insufficient to support the verdict, the verdict was against the evidence and the verdict was contrary to law.
>
> The test for sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner and drawing all proper inferences favorable to the Commonwealth, the jury could reasonably have determined the elements of the crime to have been established beyond a reasonable doubt.  <u>Commonwealth v. Porter</u>, 524 Pa. 162, 569 A.2d 942 (1990), <u>cert.</u> <u>denied</u>, 111 S.Ct. 307 (1990); <u>Commonwealth v. Hardcastle</u>, 519 Pa. 236, 546 A.2d 1101 (1988), <u>cert.</u> <u>denied</u>, 110 S.Ct. 1169 (1989).
>
> Viewing the evidence in the case at bar in the light most favorable to the Commonwealth, it is clear that it was sufficient to sustain the defendant's conviction for First Degree Murder, Retaliation Against a Witness, Possessing an Instrument of a Crime and Conspiracy.  There is no merit to defendants' claim that the evidence against them was not sufficient.
>
>        .  .  .  .
>
> The record in the instant case discloses that the convictions are sustained by the weight of the evidence.  Therefore, the defendants' request for a new trial on this ground is without merit.

Resp., Ex. A, Ex. A, pp. 11-12.  Petitioner appealed this

decision to the Superior Court.  The Superior Court stated in its
June 12, 1997 decision:

> Appellant's first contention is that the evidence
> was insufficient to sustain his convictions.  "'The law
> is settled in this Commonwealth that in reviewing the
> sufficiency of the evidence, the appellate court is
> required to review all the evidence and all reasonable
> inferences drawn therefore in the light most favorable
> to the Commonwealth, . . . [as verdict winner] .'"
> Commonwealth v. Earnest, 386 Pa. Super. 461, 563 A.2d
> 158, 159 (1989)(citation omitted).  "The test is
> whether the evidence, thus viewed, is sufficient to
> prove guilt beyond a reasonable doubt." Commonwealth
> v. Favinger, 358 Pa. Super. 245, 516 A.2d 1386, 1388
> (1986)(citation omitted).  Although a conviction must
> be based on "more than mere suspicion or conjecture,
> the Commonwealth need not establish guilt to a
> mathematical certainty." Commonwealth v. Badman, 398
> Pa. Super. 315, 580 A.2d 1367, 1372 (1990)(citation
> omitted).
>
> . . . .
>
> The Commonwealth argues that appellant has waived
> his allegations regarding the sufficiency of the
> evidence.  We agree with the Commonwealth that
> appellant has waived his allegations regarding the
> sufficiency of the evidence to support his convictions
> for first degree murder, retaliation against a witness
> and criminal conspiracy.  Appellant has not developed
> these claims properly in the argument portion of his
> appellate brief as the rationale supplied to this Court
> consists solely of the statutory language defining each
> offence and a single conclusory statement that the
> evidence was insufficient. Commonwealth v. Garcia, 443
> Pa. Super. 414, 661 A.2d 1388 (1995)(undeveloped claim
> of prosecutorial misconduct which was not supported by
> proper argument was waived).  Appellant made no
> specific claim in addressing the sufficiency of the
> evidence. "We have noted repeatedly that the mere
> assertion of error, without elaboration, will not be
> addressed." Commonwealth v. Holmes, 444 Pa. Super.
> 257, 663 A.2d 771, 773 (1995)(citations omitted).
> Appellant also has not referred us to any relevant
> authority in support of his positions. Garcia, supra.
> "This Court has held that the argument section of an
> appellant's brief must include relevant discussion of

points raised along with citations to pertinent
authorities." <u>Commonwealth v. Zewe</u>, 444 Pa. Super. 17,
663 A.2d 195, 199 (1995)(citation omitted).  "It is not
this Court's function or duty to become an advocate for
the appellant." <u>Commonwealth v. Birdseye</u>, 432 Pa.
Super. 167, 637 A.2d 1036, 1043 (1994), <u>aff'd</u>, 543 Pa.
25, 670 A.2d 1124 (1996).  As this was an extremely
lengthy and complicated trial consisting of twelve days
of testimony and argument, producing a 2000 page trial
record, appellant's failure to comply with the rules
impedes our ability to review his claims of
insufficiency with regard to murder, conspiracy and
retaliation, and, therefore, we will not address the
merits of his contentions.  <u>Commonwealth v. Boyd</u>, 451
Pa. Super. 404, 679 A.2d 1284 (1996).

     However, we find that appellant has stated a
specific claim with regard to the sufficiency of the
evidence supporting his conviction for possession of an
instrument of crime, and, therefore, we find that this
claim has not been waived.  Appellant claims that the
evidence was insufficient to support his conviction
because a baseball bat is not an instrument of crime.
We agree.
                    . . . .

     Here, we find that three of the four elements have
been established beyond a reasonable doubt.  The
Commonwealth proved that appellant possessed the
baseball bat under circumstances not manifestly
appropriate for lawful use with the intent to employ it
criminally.  However, we find that the Commonwealth
failed to offer evidence proving that the baseball bat
was commonly used for criminal purposes.  Regarding
this particular issue, in its appellate brief, the
Commonwealth argues that "a jury in an urban setting
such as Philadelphia County would be hard-pressed to
view the criminal use of baseball bats as an
aberration."  Clearly, such a general allegation is
insufficient.  Simply put, the Commonwealth offered no
evidence regarding the frequency baseball bats were
used in assault as compared to all assaults, and,
therefore the court was unable to determine that a
significant proportion of assaults involved baseball
bats.  Absent this evidence, the Commonwealth's
contention that the baseball bat was "commonly used for
criminal purposes" is conjecture.  Accordingly, we find
that the Commonwealth failed to offer sufficient

evidence to prove beyond a reasonable doubt that
appellant possessed an instrument of crime.

Resp., Ex. A, Ex. B, pp. 2, 4-5, 7.  Petitioner's second court-
appointed PCRA counsel examined the issue of sufficiency of the
evidence in her <u>Finley</u> letter to the court.  Counsel stated that:

> A ruling on a post trial motion for a new trial
> based on insufficient evidence is within the sole
> discretion of the trial court.  The Superior Court will
> overturn a jury verdict on the basis of insufficient
> [sic] of evidence only when the finding of guilt is
> based on conjecture and is so unreliable and/or
> contradictory as to shock the conscience of the court.
> <u>Commonwealth v. Harrison</u>, 290 Pa. Super. 389, 434 A.2d
> 808 (1981).
>
> Moreover, the Supreme Court has stated that: "On
> appellate review of a criminal conviction we will not
> weigh the evidence and thereby substitute our judgment
> for that of the finder of fact.  To do so would require
> an assessment of the credibility of the testimony and
> that is clearly not our function."  <u>Commonwealth v.
> Pronkoskie</u>, 498 Pa. 245, 445 A.2d 1203 (1982).

Resp., Ex. C, pp. 6-7.  The PCRA court explained in its December
16, 2002 opinion that:

> The Superior Court in considering defendant's
> appeal held, " . . . appellant's failure to comply with
> the rules impedes our ability to review his claims of
> insufficiency with regard to murder, conspiracy and
> retaliation, and therefore, we will not address the
> merits of his contentions."  However, this Court did
> consider the issue when raised in post-verdict motions.
> Appellate counsel may have been ineffective for failing
> to preserve the issue of sufficiency, but the defendant
> suffered no prejudice since the evidence was sufficient
> to sustain the convictions.

Resp., Ex. F, p. 5.  The Superior Court affirmed the PCRA court's
assessment of petitioner's issues.  Resp., Ex. G.  Respondents
note that this claim was reviewed by both Judge Savitt and the

11

Pennsylvania Superior Court, and both found that the evidence presented was sufficient to support Petitioner's convictions because it sufficiently established specific intent to kill and disproved self-defense beyond a reasonable doubt.

Nonetheless, Petitioner, in the midst of this sufficiency of the evidence argument, presents a self-defense argument and states that the Superior Court's findings were flawed because: (1) he never provoked the altercation; (2) the medical examiner was unclear about the order of each shot fired on the decedent, and therefore the prosecution did not establish that Petitioner stood over decedent, shooting him repeatedly; (3) the bullet casings on the street were proof that the decedent fired at Petitioner; (4) Petitioner testified that he thought he saw the decedent draw a gun on him; and (5) even if the decedent was unarmed, it is reasonable to fear for one's life even when an assailant is unarmed.  Petitioner claims that the evidence, at the very most, established a shooting that "erupted from an intense and physical confrontation unprovoked by the [Petitioner].  Thus, the evidence proving [sic] by the Commonwealth established nothing more than voluntary manslaughter."  Mem. Law in Supp. Pet. at 20-21.  Petitioner supports his argument only with the statement that "at trial the Commonwealth failed to prove each and every element of the charges and therefore Petitioner's conviction is constitutionally

invalid."  Pet. at 9.

At trial, it was established that Petitioner struck the victim's head twice with a baseball bat, causing multiple fractures, bruising, and lacerations to the brain.  Under Pennsylvania law, this was sufficient to allow the jury to infer that Petitioner possessed the specific intent to kill necessary for a first-degree murder conviction.  Commonwealth v. Terry, 513 Pa. 381, 409-410, 521 A.2d 398, 412 (1987), cert. denied, 482 U.S. 920 (1987)(appellant's act of repeatedly striking victim on head with baseball bat sufficient to convict of first degree murder; jury could infer specific intent to kill from use of deadly weapon on vital part of body).  Thus, there was ample evidence to convict Petitioner of first degree murder.

Under Pennsylvania law, the necessary elements for a conviction of retaliation against a witness are that Petitioner harmed the victim "by any unlawful act in retaliation for anything lawfully done in the capacity of the witness. . . ." See 18 Pa. C.S.A. § 4953(a).  At trial, the prosecution established that the victim was a witness in two unrelated murder cases and gave statements to police implicating Petitioner's friends.  Evidence also established that Petitioner willingly participated in the unlawful killing of the victim in retaliation for the victim's telling police that friends of Petitioner and his co-defendants had committed the two unrelated murders.

Testimony at trial also established that Petitioner and his co-defendants lured the victim to co-defendant Harris' home, where Petitioner hit him in the head with the bat, and co-defendant Stokes slit his throat with a machete.  The victim pleaded for his life, and Petitioner told him that he should have thought about that before becoming a snitch.  Stokes made statements before, during, and after the killing indicating the victim was killed because he told the police about the two murders he witnessed.  Thus, the prosecution established the necessary elements for a conviction of retaliation against a witness.

With respect to Petitioner's conspiracy conviction, the prosecution was required to prove "a common understanding, no matter how it came into being, that a particular criminal objective be accomplished."  Commonwealth v. Gibson, 447 Pa. Super. 132, 136, 668 A.2d 552, 555 (1995)(quoting Commonwealth v. Volk, 298 Pa. Super. 294, 300, 444 A.2d 1182, 1185 (1982)).  At trial, it was established that after the victim gave statements to police implicating Petitioner's friends in two prior murders, co-defendant Stokes warned people to stay away from the victim and told Hassan Bilal that the victim had to be killed because he snitched on their friends.  Petitioner then helped Stokes and Bilal lure the victim to co-defendant Harris' house where Petitioner struck him in the head with the baseball bat, and Stokes slit his throat while Petitioner cheered him on.  As

Respondents correctly note, the jury could readily conclude from these facts presented at trial that Petitioner, Stokes, and Harris entered into an agreement to kill the victim in retaliation for his giving statements to the police regarding the two homicides.  Once sufficient evidence was presented to implicate Petitioner in the conspiracy, Petitioner was also responsible for the actions of his co-conspirators because their actions were accomplished in furtherance of the common design, the killing of the victim.  See Commonwealth v. Baskerville, 452 Pa. Super. 82, 93, 681 A.2d 195, 201 (1996), alloc. denied, 547 Pa. 723, 689 A.2d 230 (1997).

The relevant question in this analysis is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  For the foregoing reasons, Petitioner has not met this standard for any of the crimes for which he was convicted.  Thus, this claim should be denied.

**B.     Petitioner's Prosecutorial Misconduct Claims.**

Petitioner's next claims are that the prosecutor committed misconduct when he: (a) vouched for the credibility of a witness, and (b) withheld a witness statement.  Respondents contend that these claims are meritless.

1.     Petitioner's Claim That The Prosecutor Committed Misconduct By "Vouching" For the Credibility of

15

A Commonwealth Witness.

Petitioner's first prosecutorial misconduct claim is that the prosecutor improperly vouched for the credibility of a prosecution witness, Hassan Bilal ("Bilal"), when he stated that Bilal was "marginally responsible" for the death of Anthony Vaughn, the victim in this case.  Respondents argue that this was not vouching, but was merely a response to defense counsel's attacks on Bilal's credibility made in defense counsel's closing argument.  In that closing, defense counsel repeatedly argued that Bilal was a liar who fabricated a story implicating Petitioner and his co-defendants in the Vaughn murder to obtain a favorable deal from the prosecution.  (N.T., 3/11/93, pp. 21-23, 47, 50-51, 58, 68, 70-71, 73, 103-108.)

In United States v. Walker, 155 F.3d 180 (3d Cir.1998), the Third Circuit extensively reviewed case law regarding vouching and set forth two criteria that must be met to find vouching: "(1) the prosecutor must assure the jury that the testimony of a Government witness is credible; and (2) this assurance is based on either the prosecutor's personal knowledge, or other information not contained in the record." U.S. v. Brennan, 326 F.3d 176, 183 (3d Cir. 2003)(citing Walker, 155 F.3d at 187).  In addition, the defendant "must be able to identify as the basis for [the prosecutor's comment on witness credibility] explicit or implicit reference to either the personal knowledge

of the prosecuting attorney or information not contained in the record." Id.

Following defense counsel's statement that Bilal was lying to get a favorable plea agreement, the prosecutor argued that Bilal's plea agreement permitted him to plead guilty to third degree murder, not first degree murder, as follows:

> It doesn't say he's walking out of jail tomorrow. It doesn't say, if he does whatever the Commonwealth wants him to do, he'll be free, and it's all over. It's up to the Judge, that's what an open plea means. It means there's no deal.  The only thing is, he didn't plead guilty to first degree murder.
>
> And the reason he didn't plead guilty to first degree murder is, he wasn't responsible for first degree murder.  He helped lure Vaughn there, no question about it.  But he, unlike these three people who sit before you, was not an active participant.  He didn't hit him.  He didn't slice his neck.  He didn't tie him up.  He didn't laugh about it.
>
> And he bears responsibility, because he knew it was going to happen.  And he plead guilty to Third Degree Murder and Criminal Conspiracy.
>
> . . . .
>
> . . . Hassan Bilal knew that something might very well happen to Anthony Vaughn.  And he is marginally responsible for what happened to Anthony Vaughn.  And he plead guilty to third degree murder and criminal conspiracy.

(N.T. 3/11/93, pp. 135, 173.)  The trial court examined and rejected Petitioner's current vouching argument in its post-verdict decision when it said:

> Improper bolstering or vouching for witnesses by the prosecutor occurs in two situations; one, when the prosecutor places the prestige of the government behind

the witness and two, when the prosecution indicates
that information that is not before the jury supports
the witness' testimony.  Commonwealth v. Hartey, 424
Pa. Super. 29, 621 A.2d 1023 (1993); Commonwealth v.
Reed, 300 Pa. Super. 224, 446 A.2d 311 (1982).

     Defendant relies on Commonwealth v. Bricker, 525
Pa. 362, 581 A.2d 147 (1990) for the proposition that
the trial counsel was ineffective for permitting the
Commonwealth to bolster the testimony of Hassan Bilal
by its references to his plea agreement, in particular,
to the requirement that he tell the truth.  Defendant's
reliance on Bricker is inapposite.  In Bricker the
actual documents setting forth the terms and conditions
of the plea agreements including that the witness
"provide complete and truthful information . . . to the
Commonwealth of Pennsylvania and testify as required",
were sent out with the jury.  The documents further
provided that not providing truthful information or
giving a knowingly false statement would result in
prosecution for perjury.  The documents were signed by
the United States Attorney, the District Attorney, the
Attorney General for the Commonwealth of Pennsylvania,
the defendants and their attorneys.  The Bricker court
concluded that these signed documents placed the
prestige of the government behind the witnesses
impermissibly bolstering the credibility of their
testimony.

     In the case at bar neither saw the plea agreement
nor heard its text.  The terms of the plea agreement
that the witness testified truthfully were referred to
only twice by the prosecutor, once in his opening and
once in his closing.  In doing so the prosecutor did
not place the prestige of the government behind the
witness and therefore, did not improperly bolster the
credibility of his testimony.  Trial counsel was not
ineffective for not objecting to these references and
defendant is not entitled to a new trial on this basis.

     Defendant Harris alleges that the prosecutor, in
his closing argument, stated that Commonwealth witness
Bilal was not guilty of first degree murder as a matter
of law and that trial counsel was ineffective for not
objecting to this statement.  There is no merit to this
argument because that is not what the prosecutor said.

. . . .

18

> This is a true and correct statement of Bilal's
> involvement in the crime based on the evidence elicited
> from Bilal's testimony and was properly admitted.
> Trial counsel cannot be deemed ineffective for failing
> to object to the prosecutor's proper argument.

Resp., Ex. A, Ex. A, pp. 8-10.  The trial court carefully

instructed the jury how to assess credibility, emphasizing that

the arguments of counsel were not evidence and that it was up to

the jury to decide issues of credibility.  (N.T., 3/12/93, pp.

26-29, 34-36, 37, 45-46.)  Pursuant to <u>Weeks v. Angelone</u>, 120

S.Ct. 727, 733 (2000), the jury must be presumed to have followed

the trial court's instructions.  Because all of the contested

statements by the prosecutor were based on evidence which had

been presented, Petitioner's vouching argument should be denied.

> 2.   <u>Petitioner's Claim That the Prosecutor Committed
> Misconduct By Withholding a Witness Statement</u>.

Petitioner's second prosecutorial misconduct claim is

that the prosecution withheld a witness statement until the time

of trial, and Petitioner did not have adequate time to

investigate and prepare a proper defense.  In his post-trial

motions, Petitioner's co-defendant Stokes alleged that the

prosecution failed to call a witness who would have testified

that vials of crack were found by the victim's body.  Judge

Savitt addressed this issue in his December 16, 2002 decision:

> The statement was from a witness who was not
> called to testify.  The witness could have
> testified that crack vials were found near
> the body of the decedent.  When raised via

19

> post-verdict motions it was agreed that the
> witness was available to both sides; that
> there was ample testimony that the decedent
> was involved in drug dealing; and therefore,
> the testimony was cumulative and of no
> significance regarding the defendant's guilt
> or innocence.

Resp., Ex. F, p. 7.  In order to establish a violation under

Brady v. Maryland, 373 U.S. 83 (1963), a defendant must show that

(1) evidence was suppressed; (2) it was favorable to him; and (3)

it was material to guilt or punishment.  Walker v. Lockhart, 763

F.2d 942, 957 (8th Cir. 1985), cert. denied, 478 U.S. 1020

(1986)(citing Moore v. Illinois, 408 U.S. 786, 794-795 (1972) and

Brady, 373 U.S. 83).  Evidence is material if there is a

reasonable probability that if it had been disclosed to the

defense, the result of the proceeding would have been different.

United States v. Bagley, 473 U.S. 667 (1985).  A reasonable

probability is one that is sufficient to undermine confidence in

the outcome. Id.  There is no Brady implication or violation here

because the witness statement was provided to defense counsel,

and the witness was available to both sides.  Thus, the court and

counsel agreed that the statement was cumulative and not

exculpatory because other testimony was presented that the victim

was involved in drug dealing.  This claim must therefore be

denied.

    **C.**    **Petitioner's Trial Court Error Claims.**

        Petitioner sets forth two trial court error claims.

First, Petitioner claims that the trial court erred when it allowed two Philadelphia police detectives to read into evidence two statements by the victim regarding the two previous homicides committed by Petitioner's friends.  Second, Petitioner contends that the trial court erred in allowing a crisis intervention worker to testify regarding prosecution witness Bilal.

> 1.     Whether the Trial Court Erred in Allowing the Victim's Statements to Be Read into Evidence By Philadelphia Police Detectives.

Petitioner's first claim is that the trial court erred in allowing two Philadelphia police detectives to read into evidence statements provided by the victim regarding two prior and unrelated homicides.  Petitioner raised this issue in the state court, but only as an error of state law, not as an error of constitutional proportion.  The statements which were read into evidence did not implicate Petitioner in the prior homicides.  The trial court, in its post-trial decision, stated:

> Defendant[s] Stokes and Harris argue that the court erred in admitting two statements of the victim Anthony Vaughn to police.  In those statements Vaughn stated that he was an eyewitness to a shooting in a bar and that a defendant in another crime told him that he had done a shooting.  None of these defendants was implicated in a crime by these two statements.  These statements were not hearsay as they were not offered for the truth of the matter, but only to show that Vaughn was a "snitch."  Furthermore, the court instructed the jury that the statements were being offered not for the truth of Vaughn's statement, but to show that he made them.  Under these

circumstances it is clear that the
statements were properly admitted.

Resp., Ex. A, Ex. A, p. 6.  Because Petitioner did not present

this claim as a federal constitutional argument, this Court is

precluded from reviewing the claim on its merits.

As Respondents correctly note, the only potential

federal constitutional claim which might arise from the state

court's decision would be a due process claim.  See Duncan v.

Henry, 513 U.S. 364 (1995)(stating if habeas petitioner claims

state court evidentiary ruling denied him due process of law, he

must have first raised due process claim in state court);

McCandless v. Vaughn, 172 F.3d 255 (3d Cir. 1999)(stating state

law hearsay claim did not fairly present constitutional

confrontation issue to state courts).  However, state court trial

rulings are not reviewable unless there is an error of

constitutional proportion, i.e., one which deprives a defendant

of fundamental fairness in his criminal trial.  Crane v.

Kentucky, 476 U.S. 683, 689-690 (1996).  In examining violations

of fundamental fairness, the United States Supreme Court advises

the reviewing court to determine only whether the action

complained of violates those fundamental conceptions of justice

that lie at the base of our civil and political institutions and

define the community's sense of fair play and decency.  Dowling

v. United States, 493 U.S. 342, 352-353 (1990).

In the instant case, the testimony of the two

22

detectives was directly relevant to Petitioner's retaliation conviction because it established that the victim was a witness in other homicide cases when he was killed.  This information did not, however, implicate Petitioner in the other two homicides. Moreover, the trial court instructed the jury that it could consider only whether the victim had made these statements, and not whether the information contained in the statements was true. (N.T., 3/3/93, p. 40.)  Thus, Petitioner's claim should be denied.

> 2.   <u>Whether the Trial Court Erred in Allowing into Evidence Testimony of a Crisis Intervention Worker Regarding Prosecution Witness Bilal</u>.

Petitioner next claims that the testimony of Major Davis, a crisis intervention worker who worked with prosecution witness Bilal, should not have been permitted by the trial court, because such testimony improperly bolstered Bilal's credibility. Respondents contend that this claim, like Petitioner's prior trial court error claim, was raised in the state court, but only as an error of state law, not as an error of constitutional proportion.  Because Petitioner did not present this claim as a federal constitutional argument, this Court is precluded from reviewing the claim on its merits.  Nonetheless, Respondents argue that the evidentiary ruling at issue did not deprive Petitioner of fundamental fairness and provides no basis for federal relief.

Respondents also contend that Petitioner's assertion that Major Davis' testimony bolstered Bilal's credibility is belied by the record and wholly frivolous.  Davis was a case worker with Crisis Intervention from whom Bilal sought help, and Davis was called by Stokes, once of Petitioner's co-defendants, as a defense witness to testify that Bilal had a bad reputation for being a truthful person.  (N.T., 3/10/93, p. 36.)  On cross-examination, the prosecutor asked the circumstances of Davis' interaction with Bilal, and the trial court ruled that Stokes' attorney was permitted to explore this line of questioning on re-direct examination.  (Id. at 37-39, 49-51, 65-77.)  Because the prosecution opened the door to this line of questioning on cross-examination, the court reversed its prior decision that Stokes could only call Davis as a character witness regarding the facts surrounding his contact with Bilal.  (N.T., 3/4/93, pp. 120-134; N.T., 3/9/93, pp. 109-131; N.T., 3/10/93, pp. 40-48, 52-65.)  However, the court prevented both sides from eliciting testimony from Davis regarding his personal opinion of Bilal's credibility.  Thus, Petitioner's contention that Davis' testimony bolstered Bilal's credibility is meritless.

The trial court, in its July 29, 1997 decision, stated:

> All three defendants argue that the court erred in its ruling regarding the testimony of Major Davis, a worker in Crisis Interventions, concerning Commonwealth witness Hassan Bilal.  This argument has no merit as none of the defendants was

24

prejudiced by this ruling.  When Davis was
called by the defense as a character
witness, the prosecutor questioned him about
Bilal's involvement in Crisis Intervention,
thus opening the door to certain facts.
Defense counsel were then permitted to
question the witness extensively about the
facts of Mr. Bilal's involvement in Crisis
Intervention.

Resp., Ex. A., Ex. A, p. 6.  PCRA counsel, in her <u>Finley</u> letter

to the court, examined this issue and wrote:

Petitioners [sic] allegations are
without merit.  Defense counsel called Major
Davis *inter alia* to support their claim that
Commonwealth's main witness, Bilal,
exhibited a history of delusional and
paranoid behavior which was unsubstantiated
by actual circumstances.  According to notes
of testimony from an in-chambers discussion
held on March 9, 1993, the trial judge
initially limited the testimony of Major
Davis to character testimony and his
reputation in the community as a truthful
person.  (3/9/93, N.T. pgs. 109-113).

During the course of the cross-
examination of Major Davis, the prosecutor
opened the door to areas concerning Mr.
Bilal's involvement with Major Davis at the
Crisis Prevention Center, which were areas
that defense counsel wanted to inquire into
anyway.  At that time, the trial judge
reconsidered his previous ruling from March
9, 1993, and permitted Defense counsel to
inquire into Bilal's effort to come to the
Crisis Intervention program.  (3/10/93, N.T.
pages 40-49).  Thus, there was no prejudice
to Defendant by the court's previous ruling,
since the testimony was ultimately permitted
and defense counsel was permitted to
question the witness extensively about Mr.
Bilal's involvement in crisis intervention.

Moreover, the issue was litigated,
raised on appeal and rejected by the

25

Superior Court in its memorandum opinion
dated June 12, 1997.  "An issue may not be
relitigated merely because a new or
different theory is posited as a basis for
reexamining an issue that has already been
decided." *Commonwealth v. Senk*, 496 Pa.
630, 437 A.2d 1218, 1220 (1981);
*Commonwealth v. Tenner*, 377 Pa. Super. 540,
547 A.2d 1194, 1197 (1988), *appeal denied*,
562 A.2d 826 (Pa. 1989).

Resp., Ex. C., p 7.  Because nothing in Major Davis' testimony

could be construed as bolstering Bilal's credibility, this claim

should be denied.

D.   **Petitioner's Ineffective Assistance of Trial Counsel
     Claims.**

Petitioner lastly contends that his trial counsel was

ineffective because he: (a) failed to object to the testimony of

the medical examiner who was not properly qualified as an expert;

(b) failed to ask for a corrupt source instruction; (c) labored

under an actual conflict of interest; and (d) failed to object to

witness statements regarding the veracity of a co-defendant.

Petitioner only presented one of his ineffective assistance of

trial counsel claims to all levels of the state courts.

1.   Whether Trial Counsel Was Ineffective For Not
     Objecting to the Testimony of the Medical
     Examiner Who Was Not Qualified As An Expert.

Petitioner claims that trial counsel was ineffective

for not objecting to the testimony of the medical examiner, Ian

Hood, M.D.  Petitioner contends that his counsel should have

sought an offer of proof concerning Dr. Hood's qualifications as

26

a medical examiner.  Judge Savitt, sitting as the PCRA court, concluded that "Dr. Hood was, and is, a well qualified medical examiner.  An attack on his qualifications would have been an effort in futility."  Resp., Ex. F., p. 4.  Dr. Hood testified that he had performed three thousand autopsies and had been qualified many times in Pennsylvania courts as an expert in forensic pathology.  Thus, it is not surprising that defense counsel did not want to bring added attention in the jurors' minds to the doctor's qualifications by cross-examining him regarding those qualifications.

Counsel is never ineffective for failing to undertake an arguably meritorious trial strategy.  Strickland v. Washington, 466 U.S. 668 (1984).  Moreover, "[t]here can be no Sixth Amendment deprivation of effective counsel based on an attorneys' failure to raise a meritless argument."  United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999)(citations omitted).  Because the argument presented by Petitioner was meritless, his trial counsel cannot be considered ineffective for failing to raise it at the time of trial.  Thus, this claim must be denied.

2.    Whether Trial Counsel Was Ineffective For Failing to Request A Corrupt Source Jury Instruction.

Petitioner next claims that his trial counsel was ineffective because he did not request a corrupt source jury instruction.  Respondents note that this claim is refuted by the

27

record in this case.  The trial court specifically instructed the jury to view the testimony of an accomplice with caution "because it comes from a corrupt and polluted source."  (N.T., 3/12/93, pp. 34-35.)  The court also instructed the jury to consider the status of Bilal, who was awaiting sentencing for his role in the murder of the witness at the time of Petitioner's trial, as showing his potential bias as a witness.  (N.T., 3/12/93, pp. 35-36.)  Again, "[t]here can be no Sixth Amendment deprivation of effective counsel based on an attorneys' failure to raise a meritless argument."  <u>United States v. Sanders</u>, 165 F.3d at 253 (citations omitted).  Thus, this claim must be denied.

       3.    <u>Whether Trial Counsel Was Ineffective Because He Labored Under a Conflict of Interest</u>.

Petitioner's third ineffective assistance of trial counsel claim involves an alleged conflict of interest. Petitioner claims that his trial counsel was ineffective because of his own legal problems.  This claim was presented at the PCRA level, and the court rejected it as meritless.  Judge Savitt, who was also the trial judge in this case, specifically stated that:

> This is pure speculation by the defendant
> which is not supported by the record.  Trial
> counsel's representation was zealous and
> there was no indication that counsel was
> distracted or unable to perform his duties
> as defense attorney adequately.

Resp., Ex. F, p. 3.  Respondents again correctly note that vague, conclusory allegations of ineffectiveness must be denied.

28

Zettlemoyer v. Fulcomer, 923 F.2d 284, 298 (3d Cir.), cert. denied, 502 U.S. 902 (1991).

> 4.   Petitioner's Claim That Trial Counsel Was Ineffective Because He Failed to Object to the Testimony of Dr. Schwartzman.

Petitioner's final ineffective assistance of trial counsel claim is that counsel was ineffective for failing to object to the testimony of Dr. Schwartzman, Bilal's treating psychiatrist, who stated that Bilal was "telling falsehoods."

Dr. Schwartzman testified that Bilal had complained of being tense and not being able to sleep.  An examination revealed that Bilal was alert and thinking clearly, and Dr. Schwartzman prescribed medication to relieve his anxiety and to promote sleep, although it was unclear if he ever actually took the medication.  Dr. Schwartzman testified that Bilal was not suffering from any major mental illnesses such as schizophrenia or manic depression, and he did not have any hallucinations or delusions.  (N.T., 3/2/93, pp. 36-47.)  Dr. Schwartzman characterized Bilal as having a mixed character disorder, which he described as a pattern of maladaptive behavior, or an inability to adapt to certain of life's circumstances.  (N.T., 3/2/93, pp. 75-77, 104-105.)

During cross-examination, Petitioner's co-defendant Stokes asked whether one of the manifestations of a mixed character disorder was the development of a pattern of lying, to

which Dr. Schwartzman replied, "[c]ould be, yes."  (N.T., 3/2/93,
p. 114.)  The trial court asked Dr. Schwartzman whether or not
telling untruths was a particular manifestation of Bilal's mixed
character disorder.  Dr. Schwartzman replied that he did not
think Bilal "was telling falsehoods."  (Id. at 115-116.)  He also
testified that he received no indication that Bilal was lying to
him during treatment.  (Id. at 116.)  Thus, Respondents correctly
contend that Petitioner "completely mischaracterizes Dr.
Schwartzman's answer to the court's question and argues that such
response gave rise to an inference that the doctor believed
Bilal's trial testimony.  This contention is devoid of any
merit."  See Resp., p. 47.

        The trial court examined this issue in its July 29,
1994 opinion and stated:

        Defendants Harris and Thomas argue that trial
        counsel was ineffective for not objecting to Dr.
        Richard Schwartzmann's alleged testimony that Bilal was
        telling the truth.  This argument has no merit.  Dr.
        Schwartzmann did not testify that Bilal was telling the
        truth.  At trial the court asked Dr. Schwartzmann
        whether one of the manifestations of Bilal's mental
        illness was telling falsehoods and Dr. Schwartzmann
        replied, "no, I don't think he was telling falsehoods."
        Thus, Dr. Schwartzmann did not testify that Bilal was
        telling the truth, but only that his mental illness did
        not manifest itself in telling falsehoods.  Defendants
        Thomas and Harris are not entitled to a new trial on
        this basis.

        Finally, there is no merit to the claim of all
        three defendants that the court erred in limiting their
        cross-examination of Dr. Schwartzmann concerning the
        mental condition of Commonwealth witness Hassan Bilal.
        Counsel's cross examination was not limited.  Counsel

30

> cross examined Dr. Schwartzmann thoroughly and
> completely.  The only questions that were precluded
> were those that were argumentative or which called for
> speculation on the part of the witness.

See Resp., Ex. A, Ex. A, pp. 10-11.  Petitioner presented this

issue to the Superior Court on direct appeal.  The Superior Court

held that:

> Appellant's final contention is that trial counsel
> was ineffective for failing to object to Dr.
> Schwartzman's statement that he did not believe that
> Hassan Bilal was "telling falsehoods."  Appellant
> argues that Dr. Schwartzman invaded the province of the
> jury because he made an improper credibility
> determination of Bilal.  Therefore, he argues trial
> counsel was ineffective for failing to object to Dr.
> Schwartzman's statement.  We disagree.
>
> In order to find counsel ineffective, it must be
> demonstrated that the underlying claim is of arguable
> merit, that counsel's action or inaction has no
> reasonable basis designed to serve the client's
> interest, and that trial counsel's action or inaction
> so prejudiced his client's case that it is likely that
> the result would have been different absent the errors.
> Commonwealth v. Smith, 539 Pa. 128, 650 A.2d 863
> (1994), cert. denied, 115 S.Ct. 1799 (1995).
>
> At trial, it was established that Bilal was
> treated by the prison's psychiatrist, Dr. Schwartzman.
> It was alleged that Bilal had a character disorder.
> During cross-examination, appellant's co-defendant's
> counsel questioned Dr. Schwartzman about Bilal's mental
> condition.  Specifically, the defense asked Dr.
> Schwartzman whether people who suffer from a character
> disorder tend to lie.  Dr. Schwartzman indicated that
> whether an individual with a character disorder would
> lie depended on the particular individual and the type
> of character disorder at issue.  In order to clarify
> defense counsel's line of questioning, the trial court
> asked Dr. Schwartzman whether Bilal's mental illness
> manifested itself in the telling of lies.  Dr.
> Schwartzman answered, "No, I don't think that he was
> telling falsehoods."  From this testimony, we cannot
> conclude that Dr. Schwartzman's statement was an

improper statement concerning Bilal's credibility.
Rather, the doctor's statement established that lying
was not a manifestation of Bilal's character disorder.
Accordingly, we find appellant's contention to be
meritless.  Moreover, we find that even if there was
merit to appellant's contention, he has not
demonstrated that he was prejudiced.  We fail to see
how Dr. Schwartzman's isolated statement made during
twelve days of testimony so prejudiced the jury that
appellant is entitled to a new trial.  Appellant has
failed to show that "but for" the failure of counsel to
object to Dr. Schwartzman's statement there is a
reasonable probability that the result would have been
different.  Commonwealth v. Crawley, 541 Pa. 408, 663
A.2d 676 (1995).  Also, we note that the trial court
instructed the jury on numerous occasions that the jury
was solely responsible for determining the facts and
making credibility determinations.  N.T. 3/12/93, pp.
3, 37, 43-44.  "It is well-settled that juries can be
trusted to follow the trial court's instructions."
Commonwealth v. Strickland, 306 Pa. Super. 516, 452
A.2d 844, 847 (1982).  Accordingly, we cannot find that
trial counsel was ineffective on this basis.[fn]

_____

[fn]We note that both appellant and his counsel
have filed a brief in this case.
Appellant's appellate counsel appended
appellant's pro se brief to counsel's own
brief.  Counsel invites this Court to review
the pro se brief and consider the arguments
made therein.  This we decline to do.  It is
well-settled in this Commonwealth that an
appellant does not have a right to file a
pro se supplemental brief while that
appellant is represented by counsel.
Commonwealth v. Rompilla, 539 Pa. 499, 653
A.2d 626 (1995); Commonwealth v. Ellis, 534
Pa. 176, 626 A.2d 1137 (1993).  "We [have]
held that although an appellant has a clear
right to terminate representation prior to
the filing of an appeal, there is no
concomitant right to file a separate pro se
brief once appellate counsel has filed a
brief."  Rompilla, 653 A.2d at 629 n.8
(citation omitted)(emphasis in original).
Accordingly, we will not address any of the
issues raised in appellant's pro se brief.

32

See Resp., Ex. A, Ex. B, pp. 9-10.  Dr. Schwartzman was not permitted to give opinion testimony regarding Bilal's credibility at trial.  Instead, he responded to defense questioning regarding whether Bilal's mental disorder manifested itself in telling lies.

Credibility determinations were never taken out of the jury's hands.  The trial court carefully instructed the jury that it was solely the jury's responsibility to determine the facts and decide which witnesses' testimony to believe, and that it was up to the jury to decide issues of credibility.  (N.T., 2/25/93, pp. 11-12; N.T., 3/12/93, pp. 3, 37, 43-44.)  Pursuant to Weeks, 120 S.Ct. at 733, the jury must be presumed to have followed the trial court's instructions.

Due to the trial court's instructions and the fact that Dr. Schwartzman's remark about Bilal was a brief and isolated one, it is unlikely that the doctor's remark had any effect on the outcome of the trial.  Accordingly, "[t]here can be no Sixth Amendment deprivation of effective counsel based on an attorneys' failure to raise a meritless argument."  United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999)(citations omitted).  Thus, Petitioner's claim must be denied.

For all of the above reasons, I make the following:

**RECOMMENDATION**

AND NOW, this        day of April, 2005, IT IS

RESPECTFULLY RECOMMENDED that the Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. section 2254 should be DENIED with prejudice and DISMISSED without an evidentiary hearing. There is no probable cause to issue a certificate of appealability.

BY THE COURT:

_____
ARNOLD C. RAPOPORT
UNITED STATES MAGISTRATE JUDGE